## GREEN v. CITY OF LYNN.

### (Circuit Court, D. Massachusetts. April 7, 1893.)

### No. 1,824.

1. PATENTS FOR INVENTIONS—ADJUDICATION BY SUPREME COURT ON QUESTIONS OF FACT—HOW AVAILABLE.

The decisions of the supreme court upon questions of fact in a suit determining the validity of a patent do not operate strictly as res judicata, or as a technical estoppel, in a subsequent suit in the circuit court upon the same patent between different parties, but operate merely upon the conscience of the inferior tribunal; and therefore, in applying conclusions of the supreme court, the circuit court should first inquire what facts are proven in the pending case by independent evidence, given under the ordinary rules of law, and, second, examine the opinions of the supreme court, and the line of reasoning and conclusions which they exhibit, and from these or otherwise, but not by formal evidence, become satisfied whether or not the proofs of which the latter court took cognizance were substantially the same as those in the case at bar; hence there is no reason for burdening the record in the case at bar with the record in the supreme court, and, if offered in evidence, it will be stricken out.

2. SAME—VALIDITY—LIMITATIONS—DRIVEN WELLS.

Reissued letters patent No. 4,372, granted May 9, 1871, to Nelson W. Green, for an improvement in driven wells, must be limited to the process in which the tube is driven through the earth, without boring, so as to form an air-tight joint by the pressure of the earth around it; but it covers this process whether the tube is so driven for the whole depth of the well or for only a part of such depth.

3. Same— Validity—Invention—Water Supply.

Letters patent No. 218,875, issued August 26, 1879, to N. W. Green, for a system of supplying cities and towns with water from driven wells, in so far as their object is to cause the force of suction developed by the pumps to combine with and aid the force of gravity in producing a flow of water from other subterranean reservoirs to the wells when the local supply of such wells has been exhausted by pumping, involve nothing more than the application of the ordinary training of the engineering profession to the subject-matter, and are to that extent void for want of invention.

In Equity. Suit by Nelson W. Green against the city of Lynn for the infringement of reissued patent No. 4,372, granted May 9, 1871, to N. W. Green for an improvement in driven wells, and letters patent No. 218,875, issued to the same inventor August 26, 1879, for "an inexhaustible water supply for cities and towns." In the system covered by the latter patent one or more pumps were connected with a series of any number of driven wells by a common suction pipe through which water was drawn from all of them, and thence forced through a single set of mains. The eduction pipe was supplied with a valve so loaded that it would allow the escape of the water should a higher pressure than that desired be produced therein. The principal advantage claimed for the system was that, when the local supply of water was exhausted by the wells, and the force of gravity failed to renew it from other sources, the force of suction of the pumps would become effective to produce a flow of water to the wells from other subterranean reservoirs. Bill dismissed as to this patent, and sustained in part as to No. 4,372, with decree for complainant.

T. W. Porter, for complainant.

John R. Baldwin, for defendant.

PUTNAM, Circuit Judge. Preliminary to the final hearing of this case a question of proof arose, which was disposed of at the time without examination of authorities, and should now be restated. The defendant called the attention of the court to the opinion of the supreme court in Andrews v. Hovey, 123 U. S. 267, 8 Sup. Ct. Rep. 101, reaffirmed February 10, 1888, (124 U. S. 694, 8 Sup. Ct. Rep. 676,) declaring void one of the patents in issue here on the ground of prior public use. This opinion involved a serious question of law touching the construction of section 7 of the act of March 3, 1839, then for the first time settled; and also a question of fact whether or not there had been a prior use within the meaning of that statute as construed by the court. The court found against the patent on the issue of law, and also on that of fact. This decision was handed down in November, 1887, more than four years after the bill in this case was filed, and more than four years before the question hereinafter stated was raised in this court, so that the defendant had more than ample time to put itself in proper position to avail itself of the conclusions in Andrews v. Hovey.

Under these circumstances, the defendant produced and offered in evidence two large volumes, containing the record in Andrews v. Hovey, prepared and printed in accordance with rule 10 of the su-

preme court, (3 Sup. Ct. Rep. viii.) I refer to that rule in this connection in order to specifically describe the nature of the volumes thus offered in evidence, and to clearly distinguish them from a certified copy of the record of the court in the strict sense of the word, although I am not aware that the latter would have met the purpose in question any better than the volumes offered. There was not offered with these volumes any independent evidence of the facts proven in Andrews v. Hovey, although subsequently a certified copy of the deposition of the complainant in this case given in Andrews v. Hovey was put in evidence, the same being clearly relevant,—not as a deposition, but as an admission.

The complainant objected to the reception of the two volumes in question, and April 26, 1892, moved that the same be stricken from the record. It then appeared that the volumes had simply been produced before the examiner, with the intention of filing them as evidence in the cause, but had never been formally thus filed; so that the motion of the complainant was in all respects seasonable. At the hearing on this motion neither counsel was able to produce authorities bearing upon it, or to satisfy the court that any special practice in suits of this nature had become established. Thereupon the court applied to the case well-known rules of evidence governing proceedings in equity, as well as at law, and granted the motion of the complainant. The court has since been able to make some examination of the authorities, and believes its rulings to be fully sustained by them.

It is to be observed that this question did not arise on a motion for an ad interim injunction, with reference to which the rules of evidence are not strict, but are molded to meet the convenience of a summary hearing. This may safely be done, as the ultimate rights of parties are not then involved.

Of course the findings of the supreme court in Andrews v. Hovey on questions of law are conclusive on all other courts. The same is true, as to its findings of fact, with reference to any other cause in which the court perceives that the proofs are substantially the same as those which came before the supreme court. The reasons for this need not be elaborated, but this distinction is to be noted: that, when the parties are not the same in each case, the determinations of issues of fact by the supreme court do not operate strictly as res adjudicata, or as a technical estoppel, but merely upon the conscience of the inferior tribunal. How are the cases to be brought together for this purpose? An answer based on the fundamental rules of law seems simple. First, it is essential that the facts brought to the attention of the supreme court should be proven in the pending cause independently, according to the ordinary rules of evidence; and thereupon the court in the pending cause should advise itself as best it may of what appeared to the supreme court,— ordinarily from the opinion rendered by it, and, if this is not sufficient in detail, from an informal perusal of whatever was laid before it. As this ascertainment is merely to inform the conscience of the court in the pending cause, and to enable it to follow the line of reasoning and conclusions of the appellate tribunal, there is no oc-

casion for burdening the case with the formal proof of what appeared in the supreme court, nor is there any propriety in so doing. Therefore it was that this court granted the motion of the complainant to strike out the two volumes in question, and held that the defendant, if it sought to avail itself of the reasoning and conclusions in Andrews v. Hovey, must prove the substantial matters which there appeared as independent facts according to the usual rules of evidence.

3 Rob. Pat. §§ 1017, 1175, touches this question. This portion of this work must, however, be read with care, because, as is too frequent in discussions of this and kindred questions, sufficient discrimination is not made between the rules touching interlocutory and ad interim injunctions, and those pertaining to final hearings. The court conceives, however, that the author correctly states the principle in section 1175 as follows: "The weight to be attached to any judgment in favor of a patent, as evidence of its validity in future actions, depends upon the identity of parties, the identity of issues, the identity of testimony," and so on. By the words "the identity of testimony" the author evidently means that the same facts must be proven in each case independently.

In Edgarton v. Manufacturing Co., 9 Fed. Rep. 450, the court, being asked to apply decisions in several cases to a pending patent cause, said as follows: "But the proofs in Brown v. Whittemore," (5 Fish. Pat. Cas. 524,) meaning one of the other cases, "on the question of prior use and sale with the consent of the patentee, and in Edgarton v. Breck," (5 Ban. & A. 42,) meaning also one of the other cases, "on the question of invalidity, do not seem to have been the same as in the cases now before the court. * * * Of course, if the testimony in these cases was substantially the same as that in the cases heretofore decided by the learned judges in the Massachusetts circuit court, I should feel wholly bound by their decisions, and the construction of the patent given by them." In McCloskey v. Hamill, 15 Fed. Rep. 750, the court, touching a like proposition, said: "The facts which the plaintiff proved upon the second hearing [meaning a second hearing in a prior cause] are the same which he relies upon in this case." In Celluloid Manuf'g Co. v. Zylonite Brush & Comb Co., 27 Fed. Rep. 291, the court said, (page 295:) "The facts presented by the record are so strictly similar to those in" (naming a case on the same patent, previously heard by another tribunal.) In American Bell Tel. Co. v. Wallace Electric Tel. Co., 37 Fed. Rep. 672, the court spoke of "the examination of the record," meaning plainly the record in the then pending case, made to ascertain whether distinguishable from cases theretofore decided.

None of these expressions indicate that the question now under consideration was formally presented, nor do they show distinctly how the record in each pending suit was made up; but the form of them carries a decided impression that no rule, except that which this court adopted, as already stated, ever occurred to them. Therefore, in applying the conclusions of Andrews v. Hovey, this court is —First, to inquire what facts are proven in the pending case by independent evidence, given under the ordinary rules of law; and,

second, to examine the opinions of the supreme court, and the line of reasoning and conclusions which they exhibit, and from these or otherwise—but not by formal evidence—become satisfied whether or not the proofs of which the latter court took cognizance were substantially the same as those in the case at bar. If they were, its line of reasoning and conclusions bind the conscience of this court upon the questions of fact involved; otherwise they fail to do so, perhaps wholly, perhaps in part.

It is true that this method of proceeding may produce a result on questions of fact differing from the latest findings of the supreme court, but in this respect we have the example of that court itself, as shown with reference to this very patent, in Eames v. Andrews, 122 U. S. 40, 7 Sup. Ct. Rep. 1073, and Andrews v. Hovey, already referred to. Moreover, inasmuch as it must be conceded that the conclusions in Andrews v. Hovey are in no sense a technical estoppel against the complainant in this case, it must also be conceded that he is entitled to an opportunity to correct any imperfections in the presentation of facts in the former case, especially if, as claimed by him, the result was in consequence of incautious admissions of his counsel, based on an erroneous assumption that the law was more favorable to the patent than was found by the supreme court. All that this court finds in this record touching these admissions appears on page 139, vol. 2, of the record, in an extract from complainant's brief in Andrews v. Hovey, commencing as follows: "But it is not denied that in this case there is proved that * * * other persons, without the patentee's consent and allowance, did put the invention into public use without his knowledge." It appears also (volume 2, p. 69) that this brief was put in as an exhibit, but the court has not found it in the record. So much as is given from it is an admission only of the result of what was proven in Andrews v. Hovey, and not of a general fact. It therefore can have no effect here, in the absence of facts actually proven in this case of like character with those shown in the earlier proceeding. The attention of the court has not been brought by the counsel for the defendant to any part of the record in which such facts appear.

It is also shown (volume 2, p. 138) that the complainant was one of the parties complainant in Andrews v. Hovey; but as the defendant parties are not the same, and are not shown to be in privity, this does not qualify what has already been said touching res. adjudicata and estoppel. The court believes that it has on this part of the case covered all suggestions made by the counsel, whether in oral arguments or their briefs; and it was not necessary to refer to each suggestion specifically.

With reference to the complainant's letters patent No. 218,875, on which the bill is based in part, the patentability of the subject-matter thereof is denied in the amended answer of the defendant, and the court is compelled to concur with the defendant in this particular, and to dismiss the bill so far as that patent is concerned. The larger portion of the record and of the briefs, both on the side of complainant and of defendant, is taken up with discussing the

relations of this patent, and also of the earlier patent, No. 4,372, for the driven well simply, to certain theories touching subterranean waters; but that subject-matter was exhausted in connection with patent No. 4,372,—at least so far as the law is concerned, —by Eames v. Andrews, 122 U. S. 40, 7 Sup. Ct. Rep. 1073. So far as this topic is concerned, a multiplicity of driven wells involves, under the law, no features beyond those recognized by the supreme court in the case last named.

The combination set out in patent No. 218,875 involves nothing except the application to the subject-matter of the ordinary training of the engineering profession, unless there may be something novel in the automatic waste valve claimed in combination by the complainant; but this particular question of novelty the court has not found itself obliged to investigate, for the following reasons: It is not claimed that the city of Lynn ever used this automatic waste valve, but that it so constructed its works as to get the benefit of a certain static pressure, which was its equivalent. Sometimes the most satisfactory way of ascertaining whether anything adopted by an alleged infringer is the equivalent of what is covered by the patent is to commence at the other end of the investigation, and determine whether what the infringer uses would have been patentable prior to or simultaneously with the patent in question. If not, of course it follows that it cannot be held to be the equivalent of anything lawfully patented. Now, in this case it is apparent that the use of the static pressure in the manner claimed in this record, either independently or in this combination, was not a novelty in the existing state of the art.

With reference to letters patent No. 4,372, all the questions raised in this record as to its patentability are disposed of by Eames v. Andrews, 122 U. S. 40, 7 Sup. Ct. Rep. 1073, and Beedle v. Bennett, 122 U. S. 71, 7 Sup. Ct. Rep. 1090. It is apparent that the facts proven in the present case touching this point are for all substantial purposes the same as those considered by the supreme court in the cases cited. Even the details of the circumstances attending the discovery or invention, the early experiments, and the reasons for not applying sooner for a patent, follow Beedle v. Bennett, pari passu, through the certified copy of the deposition of the complainant put into this case by the defendant.

The attention of the court has not been called to any evidence whatever of prior use of the character described in Andrews v. Hovey, already referred to. (123 U. S. 267, 8 Sup. Ct. Rep. 101, and 124 U. S. 694, 8 Sup. Ct. Rep. 676.) As the admissions of counsel in Andrews v. Hovey have, for the reasons stated, no bearing on the case at bar, this question is left as it was left by the supreme court in Eames v. Andrews and Beedle v. Bennett. As to the alleged anticipatory publications, the court perceives that the most important are identical with those considered in Eames v. Andrews, and with reference to the remainder the attention of the court has not been called to any proofs in the record touching them.

The court has been able to reach conclusions in regard to the question of infringement which appear satisfactory to it, although

it would have been more content if it could have heard more from the counsel touching it.

As to the effect and nature of the complainant's patent No. 4,372, this court turns to the reasoning and conclusions of the supreme court. While there is much which has the appearance of giving the patent a broader construction than this court gives it, the following references to the opinion in Eames v. Andrews seem to determine clearly its true nature: On page 57, 122 U. S., and page 1083, 7 Sup. Ct. Rep., the court refers to the fact that "the tube, in the act of being driven into the earth, to and into a water-bearing stratum, would form an air-tight connection with the surrounding earth;" and again, on the same page, it says: "The necessary effect of driving the tube is to displace the earth laterally by compressing it; and the elasticity of the earth is such as to cause it to cling and contract around the tube so as to exclude the air." On page 59, 122 U. S., and page 1084, 7 Sup. Ct. Rep., the court says: "It was equally a necessity to the perfect operation of the apparatus that the tube should be air-tight throughout its length." On page 61, 122 U. S., and page 1085, 7 Sup. Ct. Rep., it says again: "Therefore it follows from the amended specification and the claim of the reissued patent, by the necessity of the case, as expressly declared in the original, that a driven well cannot be constructed in a rock formation." On page 62, 122 U. S., and page 1085, 7 Sup. Ct. Rep., again referring to rock formation, it says: "The rod or tube, having been inserted in the opening made through the rock, may then be driven in the usual manner through the remainder of its course, until it reaches a water-bearing stratum of earth, as if no rock had been met in its passage."

Each of the above citations bears directly upon the proposition that, notwithstanding the speculations touching the laws of science alleged to be involved, the complainant was entitled by his patent to whatever benefit might come from driving his tube into the ground, in the literal sense of the word "driving," and to nothing more. This is made all the more clear by the references of the court (page 67, 122 U. S., and page 1088, 7 Sup. Ct. Rep.) to the extracts from "McKenzie's 5,000 Receipts" and Rees' Cyclopedia. The former described a method of boring for springs, and then putting pipes down the aperture. The court said that this was nothing more than a simple process of finding water in the usual way, as in the case of an ordinary dug or bored well, such as have been immemorially used. Of course, therefore, this process was not patentable; and, so far as the complainant might claim to cover it, his patent would be ineffectual. But the extract from Rees' Cyclopedia is even more striking. It describes a well constructed by perforating the ground to a sufficient depth by means of an auger or borer, followed by a cylindrical wooden pipe placed in the hole and driven down with a mallet, with the boring afterwards continued, so that the pipe may be forced down to a greater depth, until it reaches the water or spring. It is entirely plain that this describes a method of driving a wooden pipe in such manner that the earth about it would undoubtedly in most cases create an air-

tight joint. Yet the court held that this did not anticipate complainant's patent No. 4,372, because the "same observation" applies equally to this method of constructing a well as to that described in "McKenzie's 5,000 Receipts." In other words, the court said that merely boring a hole to be followed by a pipe driven into it in the manner described was, to repeat the language already cited from the opinion, "a simple process of finding water in the usual way, as in the case of an ordinary dug or bored well, such as have been immemorially used."

It is therefore plain that the claim of the complainant in patent No. 4,372 was held by the supreme court to be construed in its natural sense,—that is, a well obtained by actually driving a pipe into the earth without previous boring, and without removing the earth upward, so that the earth crowded back tends to make an air-tight joint; but the patentee is entitled to the benefit of this method of construction, although the driving is for only a portion of the depth, if that portion intervenes between the surface and the water-bearing stratum. Eames v. Andrews, 122 U. S. 70, 7 Sup. Ct. Rep. 1090.

This view of the patent, which this court feels bound to accept from its reading of the opinion in Eames v. Andrews, disposes of and renders unimportant all the experiments described by the defendant, of coloring the surrounding surface water, and holds the defendant liable for all wells which were driven in any part by wrenches or mauls, as described by the witnesses Walden and Hunt. So far as the wells were sunk by the use only of the water drill, they class with those described in Rees' Cyclopedia, according to the reference already made, and are not infringements.

The patent has expired, but, as the bill was filed during its currency, the jurisdiction of the court in equity is not affected thereby. There can, of course, be no injunction.

There will be a decree dismissing the bill so far as relates to patent No. 218,875, and sustaining it so far as relates to patent No. 4,372, and for an account so far as touches any wells driven in whole or part by a wrench or maul, or by analogous methods, with costs for the complainant. Complainant will file a draft decree, and give notice thereof on or before the 22d day of the current month, and defendant will file corrections, and give notice thereof on or before the 29th day of the current month.