BEACH v. HOBBS et al.

(Circuit Court, D. Massachusetts. August 23, 1897.)

No. 256.

1. FEDERAL COURTS—COMITY—EFFECT OF PRIOR DECISIONS BY CIRCUIT COURT OF APPEALS.

A decision by the circuit court of appeals in any circuit, so long as it remains unappealed from, and so long as the supreme court has issued no writ of certiorari to re-examine it, is to be regarded as having more effect in other federal courts than that ordinarily given to those of the highest state tribunals, or other courts of merely concurrent jurisdiction. This is especially true with reference to a patent for an invention, when the state of the proofs remains substantially the same. Yet, when the respondents are not the same, they are entitled to have the facts of their case carefully scrutinized, with a view of determining whether or not they present a different case from that adjudicated in the prior litigation.

2. PATENTS—VALIDITY—BOX MACHINES.

The Beach reissue, No. 11,167 (original No. 447,225), for improvements in machines for attaching stays to the corners of boxes, construed, and *held* valid as to claims 1, 2, 3, and 6; and claim 6 *held* infringed, and the first three claims *held* not infringed.

3. SAME—COMBINATIONS—AGGREGATIONS.

In determining whether a combination claim covers a true combination or a mere aggregation, the law looks only at practical, and not at theoretical, definitions and considerations; and, in a machine for attaching stays to the corners of boxes, the fact that the final result is achieved by feeding mechanism, cutting mechanism, and pasting mechanism, which perform their functions as steps towards the completed result, does not make the machine a mere aggregation.

4. SAME—VALIDITY OF REISSUES—DECISION OF PATENT OFFICE.

Where a reissue is sought on the ground of merely inadvertent errors rendering the patent inoperative, the decision of the commissioner upon mere questions of fact raised by the applicant's allegations as to inoperativeness and inadvertence will not be re-examined by the courts in passing upon the validity of the reissue.

5. SAME—DURATION OF RIGHT—EXPIRATION OF FOREIGN PATENT.

Under Rev. St. § 4887, a United States patent does not expire because of the expiration of a foreign patent for the same invention, when the foreign patent was taken out by another, without the inventor's authority, and in defiance of his rights.

6. SAME—LIMITATION OF CLAIMS.

In a patent for a machine for attaching stays to the corners of boxes, the patentee described feeding mechanism, cutting mechanism, and pasting mechanism, and the claims covering the combination of these parts with other devices ended with the words "substantially as described." While the claims were pending, the commissioner, in a communication to the applicant, required that the words "substantially as described" should be used to limit the word "mechanism" wherever it occurred in the claim. The patentee replied that this was unnecessary, because it was perfectly clear that the words "substantially as described," occurring at the end of each

claim, referred to each and every part mentioned in the claim. *Held*, that the claims were correctly construed by the patent office.

### On Rehearing.

**7. REHEARINGS IN EQUITY.**

A rehearing is not ordinarily justified where the party applying for it seeks mainly to supplement and strengthen the propositions submitted by him at the original hearing, and does not point out any slip or oversight by the court, or any other peculiar matter raising a reasonable probability that a rehearing would give a different result.

This was a suit in equity by Fred. H. Beach against Clarence W. Hobbs and others for alleged infringement of reissued letters patent No. 11,167, granted May 26, 1891, to complainant, for a machine for staying the corners of paper boxes. The original patent was numbered 447,225.

John Dane, Jr., for complainant.

Edward S. Beach, for defendants.

PUTNAM, Circuit Judge. The patent involved in this litigation purports to cover an improvement in machines for attaching stays to the corners of boxes. The specification clearly describes the main feature claimed to be covered by the patent, so far as we are concerned with it, as follows:

"It has been customary heretofore, in making paper or strawboard boxes, to apply a stay or fastening strip over the joints at the corners of the boxes, which strip is pasted down on the outside of the box, or is folded over the edge of the box, and secured by paste, both outside and inside of the corner; and such work, as far as I am aware, has heretofore been done by hand. My invention relates to a machine for doing this work."

In another part of the specification the patentee explains that, when the stay is simply placed against the exterior surface of the box corner, and not turned in or over the edge, the device may be simplified; but it is not necessary to explain this in detail. The claims in issue are 1, 2, 3, and 6, as follows:

"(1) The combination, with opposing clamping dies having diverging working faces, of a feeding mechanism constructed to deliver stay strips between said clamping dies, and a pasting mechanism for rendering adhesive the stay strips, said clamping dies being constructed to co-operate in pressing upon interposed box corners the adhesive stay strips, substantially as described.

"(2) The combination, with opposing clamping dies having diverging working faces, said clamping dies being arranged to co-operate in pressing adhesive fastening strips upon interposed box corners, a feeding mechanism constructed to feed forward a continuous fastening strip, and a cutter for severing the said continuous strip into stay strips of suitable lengths, substantially as described.

"(3) The combination, with opposing clamping dies having diverging working faces, said clamping dies being arranged to co-operate in pressing an adhesive fastening strip upon the corner of an interposed box, a feeding mechanism constructed to feed between the dies a continuous fastening strip, a pasting mechanism for applying adhesive substance to the strip, and a cutter for severing the strip into stay strips of suitable lengths, substantially as described."

"(6) The combination of opposing clamping dies having diverging working faces constructed to co-operate in pressing an adhesive stay strip upon an interposed box corner, one of said clamping dies being constructed to act with an elastic or yielding pressure, to enable the dies to operate upon box corners of different thicknesses, substantially as described."

The respondents set up by their own enumeration 17 specific defenses. We have given each of them due consideration. If, however, we should state and fully elaborate each of them, the opinion we would pass down would be unbearable; but if we omit reference to any of them it will be because the consideration of those omitted is rendered unnecessary by our conclusions with reference to other defenses, or because they have been fully disposed of in the previous litigation which has been brought to our attention.

The patent in issue was thoroughly litigated in a suit commenced in the Second circuit against alleged infringers who were other than the respondents in this case, and who are not in privity with them. In the circuit court the judgment was rendered by Judge Coxe on a final hearing on bill, answer, and proofs, and an elaborate opinion was filed by him, which will be found in Beach v. Machine Co., 63 Fed. 597. The case was also thoroughly discussed on appeal in an opinion drawn by Judge Lacombe, entitled on appeal as Manufacturing Co. v. Beach, 18 C. C. A. 165, 71 Fed. 420. The same appeal is also reported in 35 U. S. App. 667. In the court of appeals the proceeding is described as an appeal from an interlocutory decree, but by this is intended the usual decree for an injunction and an accounting, rendered after a hearing on bill, answer, and proofs, as we have already explained. There were in issue claims 1, 2, and 3, and also some other claims which are not in issue here; but claim 6 was not considered in that litigation.

Under these circumstances, it is necessary, first of all, that we should determine the effect to be given to the legal proceedings in the Second circuit. So far as a question of that nature appertains to issues made on applications for preliminary or temporary injunctions, the law is well settled, as stated by the court of appeals for this circuit in Bresnahan v. Leveller Co., 19 C. C. A. 237, 72 Fed. 920, 921, and in the Second circuit in New York Filter Manuf'g Co. v. Niagara Falls Waterworks Co., 26 C. C. A. 252, 80 Fed. 924, 929. That, however, does not determine the rule applicable to cases on final hearing, where parties respondent are not estopped by the prior litigation, and are entitled to have their rights determined strictly in accordance with the law and the facts as presented by them. So far as any proposition may be fully presented to the court of appeals in any circuit, and determined by it, resulting in a rule which is, and ought to be, of general application, especially when it involves federal questions, a condition of adjudications which would defeat uniformity throughout the United States would clearly disappoint the contemplation of congress in establishing those tribunals. It certainly was not the expectancy of congress that the establishment of those courts would destroy the general uniformity of adjudications in the federal tribunals touching general principles of law, and especially touching federal questions, which has heretofore existed; nor was it its purpose to create several centers, for the determination of that class of questions, which would take on a local character, as is the fact with reference to the various state tribunals. As was said by the circuit court of appeals for this circuit in Beal v. City of Somerville, 1 C. C. A. 598, 50 Fed. 647, 652, the circuit courts of ap-

peal must maintain themselves as tribunals of final jurisdiction, notwithstanding the possibility that cases disposed of by them may in some form reach the supreme court. In view of this fact, a decision of the circuit court of appeals in any circuit, so long as it remains unappealed from, and so long as the supreme court has not issued its writ of certiorari to re-examine it, must be regarded as having more effect than that ordinarily given to even the highest state tribunals, or to any court of merely concurrent jurisdiction, no matter how great its learning. There seems to be no method of maintaining the necessary uniformity of the law with reference to general questions, especially federal questions, unless the mature and solemn judgments of a circuit court of appeals in any circuit are accepted as authoritative declarations of the law, subject only to such criticisms on the score of oversight or evident mistake as would apply to a judgment of the circuit court of appeals in the particular circuit where the litigation then under determination may be pending. These observations must, of course, be limited to what was necessarily determined, and they cannot safely be made to include what was not strictly essential to what was thus determined. These considerations have a special importance as applied to a solemn and well-considered judgment of any circuit court of appeals with reference to a patent for an invention issued by the United States, when the state of the proofs remains substantially the same, in view of the reluctance of the supreme court to issue writs of certiorari in causes of this character, involving mainly questions of fact; otherwise such patents, although intended by statute to have effect throughout the whole country, would, for practical purposes, be territorially limited, and would be of effect only in portions thereof, and practically invalid in other portions. It is also to be borne in mind that there is no serious danger that the courts in any circuit, by following the decisions of the circuit courts of appeal in other circuits, would perpetuate any error, because of the power vested in the supreme court to rectify the same by issuing its writ of certiorari. We are not, however, required to definitely determine the effect of these considerations in the case at bar, because, to the extent that the court of appeals for the Second circuit has reached necessary conclusions in reference to the patent at issue, they meet our approval so far as they concern the condition of the case as it stands before us.[1]

In Green v. City of Lynn, 55 Fed. 516, 518, we had occasion to consider in what way the findings and decisions of any court of authority with reference to a particular patent, on a final hearing on bill, answer, and proofs, can be made available on a like final hearing in another court, where the respondents are not the same, and are not conclusively estopped by the prior determination. That new parties litigant are entitled to have their facts carefully scrutinized, with a view of determining whether or not they present a different case from that adjudicated in the prior litigation, is well illustrated by

---

[1] Note by the court: It is worth noting in this connection that each division of the court of appeal in England always follows the decisions of the other division.

Andrews v. Hovey, 123 U. S. 267, 8 Sup. Ct. 101. In Eames v. Andrews, 122 U. S. 40, 7 Sup. Ct. 1073, the supreme court considered with exceeding fullness precisely the same patent involved in Andrews v. Hovey, and sustained it, giving it a very liberal support. In Andrews v. Hovey, however, by reason of a single fact, which the court there said, at page 268, 123 U. S., and page 101, 8 Sup. Ct., was conceded by the brief filed in behalf of the owners of the patent, the court held in favor of a new alleged infringer, who was not estopped by the prior judgment, that the patent was void; and the court confirmed this later determination on an application for a rehearing in Andrews v. Hovey, 124 U. S. 694, 8 Sup. Ct. 676. This result with reference to the patent there litigated is a striking illustration of the necessity of carefully securing to new defendants or respondents all their rights as shown by the special facts exhibited by them, notwithstanding determinations in prior litigation, to which they were not parties, with reference to the same subject-matter. This principle was stated in Mackay v. Easton, 19 Wall. 619, 632, as follows:

"The cases cited under the second objection are not evidence in this case. The records of them are not before us. The reports of their decision in Howard may be referred to as expositions of law upon the facts there disclosed, but they are not evidence of those facts in other cases. * * * The general' language of the opinion must be construed and limited by the facts of the case."

In Green v. City of Lynn, ubi supra, we were asked to apply the conclusion of the supreme court in Andrews v. Hovey, and the same patent was in issue in each case; but at page 518 we laid down the rules by which courts are to be guided in adapting to a case in hand the conclusions in prior litigation, involving mixed questions of law and fact, as follows:

"Of course the findings of the supreme court in Andrews v. Hovey on questions of law are conclusive on all other courts. The same is true as to its findings of fact, with reference to any other cause in which the court perceives that the proofs are substantially the same as those which came before the supreme court. The reasons for this need not be elaborated; but this distinction is to be noted: that, when the parties are not the same in each case, the determinations of issues of fact by the supreme court do not operate strictly as res adjudicata, or as a technical estoppel, but merely upon the conscience of the inferior tribunal. How are the cases to be brought together for this purpose? An answer based on the fundamental rules of law seems simple. First, it is essential that the facts brought to the attention of the supreme court should be proven in the pending cause independently, according to the ordinary rules of evidence; and thereupon the court in the pending cause should advise itself as best it may of what appeared to the supreme court,—ordinarily from the opinion rendered by it, and, if this is not sufficient in detail, from an informal perusal of whatever was laid before it. As this ascertainment is merely to inform the conscience of the court in the pending cause, and to enable it to follow the line of reasoning and conclusions of the appellate tribunal, there is no occasion for burdening the case with the formal proof of what appeared in the supreme court, nor is there any propriety in so doing. Therefore it was that this court granted the motion of the complainant to strike out the two volumes in question, and held that the defendant, if it sought to avail itself of the reasoning and conclusions in Andrews v. Hovey, must prove the substantial matters which there appeared as independent facts according to the usual rules of evidence. 3 Rob. Pat. §§ 1017, 1175, touches this question. This portion of this work must, however, be read with care, because, as is too frequent in discussions of this and kindred questions, sufficient dis-

crimination is not made between the rules touching interlocutory and ad interim injunctions and those pertaining to final hearings. The court conceives, however, that the author correctly states the principle in section 1175, as follows: 'The weight to be attached to any judgment in favor of a patent as evidence of its validity in future actions depends upon the identity of parties, the identity of issues, the identity of testimony,' and so on. By the words 'the identity of testimony' the author evidently means that the same facts must be proven in each case independently. In Edgarton v. Manufacturing Co., 9 Fed. 450, the court, being asked to apply decisions in several cases to a pending patent cause, said as follows: 'But the proofs in Brown v. Whittemore [5 Fish. Pat. Cas. 524; Fed. Cas. No. 2,033],' meaning one of the other cases, 'on the question of prior use and sale with the consent of the patentee, and in Edgarton v. Breck [Fed. Cas. No. 4,279],' meaning also one of the other cases, 'on the question of invalidity, do not seem to have been the same as in the cases now before the court. * * * Of course, if the testimony in these cases was substantially the same as that in the cases heretofore decided by the learned judges in the Massachusetts circuit court, I should feel wholly bound by their decisions, and the construction of the patent given by them.' In McCloskey v. Hamill, 15 Fed. 750, the court, touching a like proposition, said: 'The facts which the plaintiff proved upon the second hearing,' meaning a second hearing in a prior cause, 'are the same which he relies upon in this case.' In Celluloid Manuf'g Co. v. Zylonite Brush & Comb Co., 27 Fed. 291, the court said (page 295), 'The facts presented by the record are so strictly similar to those in,' naming a case on the same patent previously heard by another tribunal. In American Bell Tel. Co. v. Wallace Electric Tel. Co., 37 Fed. 672, the court spoke of 'the examination of the record,' meaning plainly the record in the then pending case, made to ascertain whether distinguishable from cases theretofore decided. * * * Therefore, in applying the conclusions of Andrews v. Hovey, this court is—First, to inquire what facts are proven in the pending case by independent evidence given under the ordinary rules of law; and, second, to examine the opinions of the supreme court, and the line of reasoning and conclusions which they exhibit, and from these or otherwise—but not by formal evidence—become satisfied whether or not the proofs of which the latter court took cognizance were substantially the same as those in the case at bar. If they were, its line of reasoning and conclusions bind the conscience of this court upon the questions of fact involved; otherwise they fail to do so, perhaps wholly, perhaps in part. It is true that this method of proceeding may produce a result on questions of fact differing from the latest findings of the supreme court, but in this respect we have the example of that court itself, as shown with reference to this very patent, in Eames v. Andrews, 122 U. S. 40, 7 Sup. Ct. 1073, and Andrews v. Hovey, already referred to."

Applying all the considerations which we have thus explained to the protection of the rights of the present respondents in every particular, and at the same time giving the conclusions of the circuit court of appeals for the Second circuit the weight which, under the circumstances, we feel bound to give to them, whether we should regard ourselves as in any extent conclusively bound by them or not, and adding thereto the fact that those conclusions, so far as they are necessary to the case at bar, receive, after a careful consideration of them, and of the facts now before us, our own approval, the result is that we need refer only in the briefest manner to the more substantial questions raised at bar, and are able to dispose of them without difficulty. The defense pressed on us most fully and urgently relates to alleged anticipations and the prior state of the art. It appears by the opinion of Judge Coxe in 63 Fed., at page 600, that the respondents in the prior litigation introduced 47 patents showing improvements in machines for making boxes, for inserting wire staples, for flanging boiler plates, for sticking labels and revenue stamps, for bending stiffeners for the heels of shoes, and for applying shoe-button

fasteners. Lists of these patents will be found in 35 U. S. App., beginning at page 681, 18 C. C. A. 165, 71 Fed. 420. Judge Coxe, however, stated that it was conceded by the respondents' expert that none of those patents anticipated, and also that the discussion was narrowed down to the consideration of two or three prior patents with reference to the state of the art. Judge Lacombe, in the circuit court of appeals, having before him all these prior patents, said, however, at page 169, 18 C. C. A., and page 423, 71 Fed.: "The patentee indisputably made a machine which did work that theretofore had always been done by hand;" and also at page 170, 18 C. C. A., and page 424, 71 Fed.: "Certainly the state of the art exhibits a necessary part of the work of box-making as done by hand with no machine existing in the art to do it. That machine the complainant was the first to supply." These conclusions were essential to the determination of the appeal. He then considered at length, on the same page, a prior machine used for pasting address labels on folded newspapers, which same machine is again pressed on our consideration. It is entirely plain that, having before it the entire state of the art as exhibited to us, with only two of three exceptions, to which we will refer, the circuit court of appeals for the Second circuit held that the patentee's device was not anticipated, was useful, and involved an important invention. In the present case the respondents have introduced two patents,—one to Maxfield and one to Terry,—which were not before the courts in the Second circuit, and which, so far as we can understand, are introduced more for the purpose of disputing the accuracy of the testimony of the complainant's expert than for throwing light on the case itself. The proposition of the respondents seems to be merely that the machines of Maxfield and Terry were useful for putting stay strips in round boxes, without any claim that they operated in any particular as the complainant's machine operates, or, indeed, that they were in any sense automatic. Whatever may be the position of the respondents in this particular, we are satisfied that the Maxfield and Terry devices present in no respect the functions of that now in issue. The respondents also introduce in evidence a patent granted to one Sawyer for an improvement in label and tag machines, which, apparently, was not in the New York litigation. This, however, was never adapted to the special art involved in the case before us, is subject to the same considerations which dispose of the machines for pasting address labels, and, on principles over and over again stated, cannot deprive the complainant of the benefit of his invention. Potts & Co. v. Creager, 155 U. S. 597, 606, 15 Sup. Ct. 194; National Cash-Register Co. v. Boston Cash Indicator & Recorder Co., 156 U. S. 502, 515, 15 Sup. Ct. 434; Packard v. Lacing-Stud Co., 16 C. C. A. 639, 70 Fed. 66, 68; Boston & R. Electric St. Ry. Co. v. Bemis Car-Box Co., 25 C. C. A. 420, 80 Fed. 287, 289.

On the questions of anticipation and the state of the art we therefore follow the conclusions of the circuit court of appeals for the Second circuit. As we have observed, that court did not consider claim 6. This, however, is of no importance, because claim 6 contains the pith of the complainant's invention, which was in the adaptation of the clamping dies, and was necessarily involved in the con-

sideration of alleged anticipations and the state of the art in connection with claims 1, 2, and 3. The conclusions on this topic with reference to claims 1, 2, and 3 apply to claim 6. That court said (18 C. C. A., at page 169, 71 Fed., at page 423) that the first three claims are broad ones, covering "every device for affixing stay strips to the outside of box corners, where the operation is performed by the compound action of a feeding mechanism, a cutting mechanism, and a pasting mechanism, in combination with any opposing clamping dies whose faces diverge." We think that this broad statement goes beyond what the case demanded, and must be regarded as a dictum which we are not required to follow. However this may have been, the respondents have brought to our attention certain facts, apparently not brought to the attention of the courts in the prior litigation, which do not permit the broadest construction of the incidental devices for feeding, cutting, and pasting. We will refer to these again hereafter; but, so far as the general conclusion of the circuit court of appeals for the Second circuit is to the effect that the actual invention of the complainant was a valuable one, that it was broad in its character, and that it should receive a liberal support, we follow it.

We are also prepared to follow that court in the conclusions contained in the opinion of Judge Lacombe, found at page 171, 18 C. C. A., and page 425, 71 Fed., adverse to the contention so strongly urged on us, that there was some broadening or expansion of the first three claims while the applications were pending in the patent office, impairing the patent as issued. We also say the same as to the conclusions of Judge Lacombe's opinion, found at page 170, 18 C. C. A., and page 424, 71 Fed., adverse to the further propositions, also strenuously urged on us, that the patent now before us is a mere paper one, and that whatever utility apparently attaches to it really belongs to machines constructed according to later devices. With reference to all of these propositions, the facts before us are in all respects the same as in the prior litigation, and each of them received the full consideration of the courts at that time, so that the prior adjudications with reference thereto ought to bind us; and, in addition thereto, we are satisfied that their conclusions were correct.

As we follow the determinations in the prior litigation only with reference to the topics we have already discussed, we will have no occasion to consider the criticisms made by the respondents in reference thereto touching other particulars.

The respondents press the defense that the combinations of claims 1, 2, and 3 constitute nonpatentable aggregations, maintaining that each mechanism—that is, the one for pasting, the one for feeding, the one for cutting, and the one for pressing—"produces its appropriate effect unchanged by the others." The most practical and useful definition of an aggregation is that found in Hailes v. Van Wormer, 20 Wall. 353, 368, as follows:

"It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known, and in common use, before the combination was made. But the results must be a product of the combination, and not a mere aggregation of several results, each the complete product of one of the combined elements."

Merely to produce an effect is not to produce a result within the meaning of this definition, nor can it be truthfully said that either of the mechanisms referred to produces an "effect unchanged by the others." The feeding mechanism, the cutting mechanism, and the pasting mechanism are only steps, each, to be sure, distinguishable and complete steps, towards the result which is accomplished when the pressing has been done, and which is the only result, in a practical sense, accompl'shed by the combinations covered by these claims. The patent law necessarily looks only at practical, not at theoretical, definitions and considerations in these particulars, as in all others. It would be hard to conceive of a device for doing automatic work where strips of paper are to be severed into pieces, and each piece separately manipulated, without a proper feeding, cutting, and pasting device, if pasting is a part of the entire work. The important case of Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299, could never have resulted as it did if the proposition of the respondents in this particular was entitled to approval.

The complainant first applied for his patent June 10, 1885, and it was issued February 24, 1891. He discovered some errors in the drawings, which, if literally followed, would clearly have made his device inoperative. He thereupon, with a promptness which leaves no opportunity for criticism in that particular, on April 9, 1891, applied for a reissue, which he obtained May 26, 1891. The respondents say, in substance, that, notwithstanding the defects in the drawings, any person ordinarily skilled in the art would not have been misled by them, and that, therefore, the original patent was not, in fact, inoperative. This suit is brought on the reissue, and the respondents claim that for the reasons stated the commissioner had no authority to grant a reissue, and that it is invalid. This proposition does not seem to have been submitted to the courts in the prior litigation.

Section 4916 of the Revised Statutes provides as follows:

"Whenever any patent is inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a new patent for the same invention, and in accordance with the corrected specification, to be issued to the patentee."

The application of the complainant for the reissue, and the oath accompanying it, set out every jurisdictional fact required to entitle him to a reissue. They declared that the patent was inoperative by reason of the errors to which we have referred, and also that the errors arose by inadvertence. It is true that by the letter of the statute the commissioner has no jurisdiction to grant a reissue unless the jurisdictional facts exist as required by law; but the allegations made by the applicant with reference to the alleged inoperativeness and the alleged inadvertence raised pure questions of fact, peculiarly fitted to be disposed of by an adjudication of the commissioner of patents, and in no way involving any of the class of fundamental questions affecting the interests of other parties, which the

supreme court has not hesitated to reinvestigate on questions of reissue, notwithstanding the determination of the patent office with reference thereto. This precise question came before this court in American Sulphite Pulp Co. v. Howland Falls Pulp Co., 70 Fed. 986, 991, where we said as follows:

"While, according to our opinion, the reissue was not necessary, and the construction and effect of the patent are in all respects the same as though it had not been obtained, yet the application for it claimed inadvertence with regard to the description of the compactness of the material used for lining, and to the directions with reference to its thickness; so that we think that, on the whole the determination whether the specification needed amendment, and whether a reissue was essential or proper, was so much a matter of doubt, and therefore rested so largely with the commissioner of patents, that it cannot be properly reviewed by us."

This case came before the court of appeals (25 C. C. A. 500, 80 Fed. 395), but the question of reissue was not raised in it. The appellate court therefore did not pass on this proposition, and the decision of this court with reference thereto stands as yet unchallenged, and is sufficient to control us in the present case. We may add, however, that in U. S. v. American Bell Tel. Co., 167 U. S. 224, 17 Sup. Ct. 809, the court, at page 267, 167 U. S., and page 809, 17 Sup. Ct., reaffirmed the statement that, even in matters of reissues, the commissioner of patents exercises quasi-judicial functions. We are not aware of any decision of that court which deprives him of the power of exercising such functions with reference to questions of mere detail, and affecting no substantial right. It would be an unreasonable state of the law which, in a matter of detail of this character, would deprive both the patentee and the public of the benefit of the conclusive effect of a summary proceeding at the patent office, and would compel both to await the result of a long litigation before being able to ascertain whether a reissue was effective or otherwise, and whether, on account of it, there existed or not a valid patent, which the one was entitled to enforce and the other bound to respect.

There is no substantial question as to the validity of the sixth claim which has not been met by what we have already said with reference to the other claims. The respondents maintain that this claim came in by amendment in November, 1890, which was after one Horton applied for a patent for his machine, which the respondents say is the alleged infringing machine in the case at bar. The fact is, however, that it must have been apparent on the earliest application, filed by the complainant June 10, 1885, that what now appears as claim 6 was the real pith of his invention. Any person having any skill in the art could not have failed to have discovered this, and to have been warned, accordingly, of what might develop as the proceedings progressed in the patent office. But a conclusive answer to the proposition of the respondents is that on December 8, 1886, a claim was brought in by amendment in all respects the same as claim 6, except that it in terms limited the elasticity to the lower end of the plunger. This was a clear statement of the nature of the complainant's invention as now shown in the sixth claim, and any one fairly conversant with the topic must have seen that his limiting the

elasticity by the mere letter to the lower end was a blunder. Further than this, the patent to Horton states as follows:

"This invention relates to that class of machines for applying stays to the corners of boxes and box covers, in which a rectangular mandrel is employed to support the box or cover internally, while a reciprocating plunger having a re-entrant angle in its operating face descends, and bends the stay into angular form, and presses it upon the corner of the box body or cover while the same is supported by the mandrel. The invention has for its object to provide a simple, efficient, and rapidly operating machine of this class."

By this statement, Horton, and the respondents, who are manufacturing under him, are expressly limited to an improvement on the pith of the device shown in the sixth claim. They made that their point of departure, and by so doing they assumed all hazards, whatever they might be, of the rights of any person to priority with reference to the substance of the sixth claim, whether a patent had been issued, or applied for, or neither.

The respondents contend that one Jaegar obtained a British patent for exactly the same invention as that now in issue, and that this British patent has expired. It is not claimed that this patent was obtained under any authorization from the complainant, direct or indirect, or that Jaegar in fact anticipated him. So far as the record shows, it was obtained in violation of the complainant's rights. Nevertheless, the respondents maintain that, by reason of the mere letter of the closing paragraph of section 4887 of the Revised Statutes, the complainant's patent in the United States expired when this unauthorized patent terminated. Such a construction of the law is too unreasonable to obtain credit in any court, and is easily met by the fact that the whole section is to be taken together; and it is apparent from the first part of it that the whole relates only to patents taken out by patentees under the laws of the United States.

We now have left only the question of infringement. With reference to the sixth claim, there is no occasion for any discussion on this point. The complainant's expert testifies, without contradiction, that the respondents' machine has all the elements contained in this claim, and he enumerates them for the purpose of making his testimony emphatic and unmistakable in this particular. He is plainly right. There are serious difficulties with reference to the question of the infringement of claims 1, 2, and 3. These depend on their proper construction. As we have seen, the court of appeals for the Second circuit expressed the view that they applied to every device for affixing stay strips to the outside of box corners, where the operation is performed by the combined action of a feeding mechanism, a cutting mechanism, and a pasting mechanism, with any opposing clamp dies whose faces diverge. This permits any forms of feeding mechanism, cutting mechanism, or pasting mechanism. But each of the claims closes with the words "substantially as described." The cutting mechanism described in the specification is of so simple a character that possibly almost any device for cutting with sharp edges would be regarded as comprehending its equivalent; but the feeding mechanism therein described is a complicated combination, with minute details evidently intended to accomplish special functions, al-

though the functions are not set out in the patent. The commissioner of patents, by his communication of December 26, 1890, required that the words "substantially as described" should be used to limit the word "mechanism" in each claim wherever the word "mechanism" occurred; but the complainant replied, December 31, 1890, that this was unnecessary, because, as he stated, "it is perfectly clear that the words 'substantially as described,' found at the end of each claim, refer to each and every part mentioned in the claim." These incidental mechanisms were expressly made elements in claims 1, 2, and 3. It is not necessary to go over the question of a limitation by a patentee of the claims of his patent by what occurs in the patent office, because this has all been fully covered by the court of appeals for this circuit in Reece Buttonhole Mach. Co. v. Globe Buttonhole Mach. Co., 10 C. C. A. 194, 61 Fed. 958; and the proposition is also restated in the opinion passed down August 20th in Hart & Hegeman Manuf'g Co. v. Anchor Electric Co., 82 Fed. 911. But; certainly, what thus appears on the records of the patent office must be accepted as the complainant's formal acquiescence of record in the demand of the patent office that the claims should be expressly limited in the way in which the patentee thus solemnly says they were in fact limited. This series of facts does not seem to have been brought to the consideration of the courts in the Second circuit, but they have been especially brought to our attention, and we are, therefore, required to give them due effect. In this particular these claims are like those of the patent in Machine Co. v. Lancaster, 129 U. S. 263, 266, 9 Sup. Ct. 299, already cited; and yet in that case, at every point where it considered the incidental mechanisms forming a part of the entire machine, as the incidental mechanisms here of feeding, cutting, and pasting form parts of this machine, the court, at pages 284–286, 289, and 290, 129 U. S., and page 299, 9 Sup. Ct., assumed and impliedly held that the patent covered only known substitutes or equivalents for those incidental matters.

Now, in the case at bar, as we have already said, the feeding mechanism of the combination is expressed to be of a detailed character, apparently having in view special functions. The work to be done by the respondents' machine is much simpler than that which can be accomplished by the complainant's, as it relates wholly to pasting stay strips on the outside of the corners of boxes. Therefore the strips can be made to approach the dies in the respondents' device at right angles to the line by which they must approach it in the complainant's device for at least a part of its operations; and for this and other reasons the respondents' feeding device might well be much simpler than the complainant's, and have regard to very different functions. In saying this we bear in mind that the reciprocating plates of the respondents' mechanism, carrying the stay strip, are generally regarded as the equivalent of the complainant's feed rolls with their intermittent motion; but, notwithstanding this, the respondents' device for feeding seems to omit the complicated details which are parts of the complainant's device, as we have already explained them. The complainant has not deemed it necessary to elaborate his case on this question, and it is possible that we do not fully under-

stand the nature of his combination with reference to the feeding device; but, from the examination we have given it, we feel bound, for the reasons stated, to hold that the combinations in claims 1, 2, and 3 are so limited in this particular that the respondents do not infringe them.

Let the complainant file a draft decree for an injunction and an account with reference to the sixth claim only, such draft decree to be filed on or before the 11th day of September next, and corrections thereof to be filed on or before the 18th day of September next.

## On Rehearing.

### (October 8, 1897.)

PUTNAM, Circuit Judge. On this motion for a rehearing, the complainant does not point out any mere slip or oversight on the part of the court, or any other peculiar matter which raises any reasonable probability that a rehearing would give any new result. His main purpose is to supplement and strengthen his propositions submitted in argument at the hearing. Matters of that character do not ordinarily justify a rehearing. While the court is not inclined to insist too strictly on the application of rules of this nature, and would especially be inclined to relax them if there were not ample remedy by appeal for any errors it may have committed, it is certain that there does not appear such a degree of probability in favor of the complainant on this application as to justify the expense, delay, and vexation of further litigation in this court.

The complainant insists that we have misapprehended the considerations that were had in view by the court of appeals for the Second circuit in Manufacturing Co. v. Beach, 18 C. C. A. 165, 71 Fed. 420, in construing claims 1, 2, and 3 of the patent in litigation. In determining this matter, we were governed by what we found on the face of the opinion of the court, coupled with what further appeared in the case as reported. The complainant now asks to bring in the briefs submitted to the court, and also certain affidavits of counsel who took part in the arguments, for the purpose of showing that all the considerations urged upon us were also urged upon the court of appeals in the Second circuit. If in any instance, not of an exceptional character, we could be required to go into an incidental investigation of this kind, so full of labor and uncertainties that it might involve more than all the rest, even of an important and complicated case, it would result in no advantage here, because a study of the opinions on appeal and at the circuit in the prior litigation shows that the infringement of claims 1, 2, and 3 was admitted; so that the construction of them did not come in issue in the way in which it comes in issue here. Moreover, we are governed on this point by Machine Co. v. Lancaster, 129 U. S. 263, 266, 9 Sup. Ct. 299, referred to in our opinion passed down August 23, 1897, whatever may have been the view of the courts in the Second circuit. The petition for a rehearing is denied.