DUFF MFG. CO. v. NORTON.

(Circuit Court, D. Massachusetts. October 4, 1899.)

1. PATENTS—CONSTRUCTION AND VALIDITY—EFFECT OF PRIOR DECISIONS.
   The rule that, in cases involving mixed questions of law and fact, especially cases arising with reference to patents for inventions, the courts in one circuit should follow the solemn decisions of the circuit court of appeals in another circuit, when it appears that the issues and proofs are substantially the same, is *held* to apply, not only to questions of the validity of patents, but also to the construction of claims, so far as they need be construed, with reference to alleged infringements.

2. SAME—INFRINGEMENT—LIFTING JACKS.
   In view of the rule stated as to the effect of prior decisions, the Barrett patent, No. 455,993, for an improvement in lifting jacks, construed, and *held* valid and infringed as to claims 1, 2, and 6.

3. SAME.
   The Barrett patent, No. 511,923, for an improvement in lifting jacks, the claims of which relate only to such a construction of the frame as will guide the pawls into the notch when the jack is in rapid action, does not disclose patentable invention, and is void.

This was a suit in equity by the Duff Manufacturing Company against Arthur O. Norton for infringement of certain patents. On final hearing.

James I. Kay, for complainant.
Edward S. Beach, for defendant.

PUTNAM, Circuit Judge. This case relates to alleged infringements of claims 1, 2, and 6 of the patent issued to Josiah Barrett on July 14, 1891 (No. 455,993), and of claims 1 and 2 of the patent issued to Mr. Barrett on January 2, 1894 (No. 511,923). Each of the patents purports to relate to improvements in lifting jacks. The earlier patent was under consideration on an application for an ad interim injunction in this case, as shown by our opinion passed down on March 15, 1899. 92 Fed. 921. The lifting jacks to which these patents relate are those of which the basis is a notched lifting bar, moved by two pawls, which pawls are, respectively, hinged on opposite sides from the pivot of the lever which moves them, so that the motion of each is in a reverse direction from that of the other. While the jack is being used for raising, each pawl drops naturally, by its own weight, from the notch with which it was last engaged, when the other pawl becomes engaged with its proper notch, and is, in its turn, pushed up by the lever. In this way the pawls operate alternately in raising the bar without difficulty. The improvement in issue with reference to the earlier patent was intended to obviate the difficulty arising from the fact that, when a weight is being lowered, the pawls will not naturally detach themselves from the notches in the bar. In the jacks alike of the complainant and the respondent this difficulty is overcome by the use of a spring, or other elastic device, which withdraws the pawls alternately from engagement with the notches in the bar. In the prior art this was accomplished by mounting the springs on the pawls, but in each jack before the court the springs, or other elastic devices, are mounted elsewhere than on the pawls. In the specification of his patent No. 455,993, Mr. Barrett says that he makes use of "a yielding tripping-plate having lugs thereon adapted to engage with the fingers of the pawls, and, by the pressure thereof, to withdraw the pawls from engagement with the toothed bar." The claims in issue in this patent are as follows:

"(1) In a jack, the combination of a bar, having teeth on one side thereof, a pivotal lever, two pawls pivoted to said lever, and having fingers rigid therewith, and a yielding tripping-plate having lugs thereon adapted to engage with said fingers, and through the same draw the pawls from engagement with the toothed bar, substantially as and for the purposes set forth.

"(2) In a jack, the combination of a bar having teeth on one side thereof, a pivotal lever, two pawls pivoted to said lever and having fingers rigid therewith, and a yielding tripping-plate pivoted to the jack-frame, and having lugs thereon adapted to engage with said fingers, substantially as and for the purposes set forth."

"(6) In a jack, the combination of a bar having teeth on one side thereof, a pivotal lever, a pawl pivoted to said lever and having a finger rigid therewith, and a yielding tripping-plate mounted on the frame and having a lug adapted to contact with said finger, and through the same draw the pawl from engagement with the toothed bar, substantially as and for the purposes set forth."

Both in the specification and in the claims Mr. Barrett uses the word "fingers." These fingers, as shown in his drawings, are secured to the side of the pawls, and engage the lugs on the tripping-plate. His commercial construction omits the fingers, but it uses

what is strictly the mechanical equivalent thereof; and no issue can be raised in the case by reason of that fact.

This patent has been very much in litigation, which was described in part in our opinion passed down on March 15, 1899. The only suit to which we need now refer is that in the Third circuit, reported in the circuit court as Manufacturing Co. v. Forgie, 78 Fed. 626, and in the circuit court of appeals as Forgie v. Manufacturing Co., 26 C. C. A. 654, 81 Fed. 865. We have already, in Green v. City of Lynn, 55 Fed. 516, 518, and in Beach v. Hobbs, 82 Fed. 916, 919, indicated our views as to the effect to be given to decisions in other circuits, and also as to the method of ascertaining whether or not, in cases involving mixed questions of law and fact, the prior litigation covered substantially the same issues as those in the pending case. Since these expressions of our views, the circuit court of appeals for this circuit, in Beach v. Hobbs, 34 C. C. A. 248, 92 Fed. 146, 147, has given full effect to them in the following language, which referred to earlier litigation in another circuit:

"Although the defendants in this case are not the same or in privity with the defendants in the other cases, we think, as a general rule, and especially in patent cases, we should follow the decision of the circuit court of appeals of another circuit upon final hearing with respect to the issues determined, if based upon substantially the same state of facts, unless it should clearly appear that there was manifest error."

The circuit courts and the circuit courts of appeals throughout the United States are of equal dignity, and therefore we are unable to perceive any reason why, unless in cases of clear error or oversight, each of these courts should not follow the rule practiced in the two divisions of the court of appeal, sitting under the English judicature acts, to the effect that each division accepts the decisions of the other as of binding force, thereby avoiding the just complaints, and the substantial detriment to the administration of the law, which come from inconsistent proceedings of several tribunals of like authority. At the hearing before us on the application for an ad interim injunction, the patent of one Alfred was interposed, which was not in evidence in the prior litigation. That is now withdrawn from the record. A careful scrutiny of the opinions given in the Third circuit leads to the conclusion that the proofs in the case there adjudicated were substantially the same as the proofs now before us, and therefore we are able to perceive that the adjudications in the Third circuit related to the same issues which are now before us, except a single question, which is as to the form of the alleged infringing device, to which we will hereafter refer, and which, as we will explain, is, in our opinion, unsubstantial. The issues thus involved are as to the nature of the patentee's alleged invention, as to the construction to be given to his claims, and as to the relation of that construction to alleged infringing devices. With reference to all these, we are able, in view of the facts to which we have referred, to apply the rules which we have heretofore laid down with regard to adjudications in other circuits; and inasmuch as the case before us is, in any view of it, far

from clear in behalf of the respondent, so that it would be impossible for us to assume that, if we took it up anew, our investigations would yield better results than those of the courts in the Third circuit, we ought to abide by what has already been determined. The litigation in the Third circuit related specifically to only the first and sixth claims of the patent in issue, but the respondent has not sought to point out to us that a determination as to those claims should not be followed by a like determination with reference to claim 2. Moreover, while it is true that the litigation in the Third circuit arose on an application for an ad interim injunction, yet the courts of that circuit, in passing upon it, solemnly determined all the issues we have before us, and the conclusions are quite as effective as though they had followed a hearing on bill, answer, and proofs. That litigation determined fully the question of the validity of the patent in issue, so far as the invention covered by the claims which we are considering is concerned. The opinion in the circuit court was rendered by Judge Buffington, and was practically adopted by the circuit court of appeals, so that, for the purposes of this opinion, we need refer only to it. At page 630 it observed as follows: "The yielding tripping-plate, which is the foundation of Barrett's device, seems wholly new. Nothing in anticipation thereof was cited to the court, or by way of reference in the patent office." At the foot of page 628, and top of page 629, it explained the objections to the prior method of mounting the springs upon the pawl, and the advantages of Barrett's improvement, which it pronounced "a decided advance." A careful examination of this opinion discloses that, in view of the facts appearing in the record, in which particular the case at bar does not differ from that before Judge Buffington, he gave the claims so broad a construction as to hold that Forgie's device infringed, although Forgie did not use a "yielding tripping-plate," as those words are commonly understood, but, in lieu thereof, used what Judge Buffington describes, at pages 630 and 631, as follows:

"His [meaning Forgie's] reversing apparatus [meaning by this the apparatus which answered the purpose of the Barrett yielding tripping-plate] consists of a sliding iron base plate, in which are seated two stiff brass springs with upwardly projecting ends. When a reverse action is desired, the plate is shifted and held rigid by an eccentric button. This shifting places the ends of the springs in positive, intense connection with the rigid fingers on the pawls. Starting with the upper pawl in engagement with the toothed notch, and counteracting the pressure exerted by the tool wrench on the jack nose, we find that, as the lever is rocked forward, this upper pawl, being above the lever's pivot, is drawn forward, whereby an increasing spring pressure is encountered. The result is, the pawl seeks to disengage itself from the notch. * * * The jack is ingenious, different in form from Barrett's, and we are free to say, at first view, seemingly different in substance. But detail examination and an analysis of its elements satisfy us very clearly that its principle, design, and functional purposes are based wholly on the conception of the application to this art of the yielding tripping-plate which Barrett suggested. To us it seems that a large part of the ingenuity shown in its structure is a studied purpose to so clearly transpose and rearrange Barrett's elements as to obscure the fact that it embodies the substance of his [Barrett's] invention."

First of all, the last sentence cited from Judge Buffington applies with full force to the form of the device of the respondent in the case at bar. Moreover, the respondent has merely substituted for the sliding base plate, moving horizontally, a rocker shaft, the line of whose motion is perpendicular, and for Forgie's stiff brass springs hard rubber tips. These modifications of Forgie's attempted escape from Barrett's invention are only such mechanical contrivances as would easily be devised by a skillful workman seeking some other method of evasion; and, mounted as they are on the jack frame, they accomplish, to use the language of Judge Buffington, "the principle, design, and functional purposes" of Barrett's conception by methods which might easily have been substituted by any person of ordinary skill in the art. In view of these conclusions, we are forced to adopt, with reference to letters patent No. 455,993, the results reached in the Third circuit.

The respondent, as we have already said, undertakes to make some use of the fact that Barrett, throughout his patent and in his drawings, describes "fingers" attached laterally to his pawls; but we have already disposed of that matter. The respondent also urges on the court the usual presumption arising from the fact that his device also is covered by a patent; but the application of such a presumption is always dangerous, as it cannot always be known whether the patent office contemplated that the later patent covered a substantial divergence, or only an improvement on the earlier one. Moreover, the breadth of construction given in the Third circuit to the claims in issue necessarily covers that proposition.

With reference to the other patent in suit, we are led to the conclusion that the claims in issue involve nothing which was patentable. They relate only to the interposition of a rib inside of the jack frame, or a thickening of some part of the interior surface of the frame, for the purpose of guiding each pawl into the notch when the jack is under rapid action. In Bates v. Keith, 82 Fed. 100, 103, we expressed our views on the subject-matter of guides, to the effect that they are so common in the arts, and have been used from time to time for so many purposes, that the presumption is that no adaptation of them, and no new form, includes invention. There are no special facts in the case at bar to take it out of the usual presumptions with reference to guides, because, so far as the record shows, the forms of guide adopted, alike by the respondent and the complainant, are only such as would readily occur to any mechanic of ordinary skill in the art as soon as he discovered that the pawls needed their assistance. Let there be a decree, as provided in rule 21, for an injunction and an accounting with reference to claims 1, 2, and 6 of letters patent No. 455,993, incorporating an order that on final decree the bill will be dismissed as to letters patent No. 511,923, and further providing that the question of costs also abide that decree.