VICTOR TALKING MACH. CO. et al. v. DUPLEX PHONOGRAPH CO.

(Circuit Court, W. D. Michigan, S. D. May 27, 1909.)

1. PATENTS (§ 58*)—ANTICIPATION—BURDEN OF PROOF.

On an issue as to anticipation, the burden of proof rests on the party pleading such defense, and, where the identity of methods and results in the two devices is doubtful, the doubt must be resolved in favor of the patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 75; Dec. Dig. § 58.*]

---

**2.** PATENTS (§ 87*)—ABANDONMENT—EVIDENCE.

Questions relating to the actual or constructive abandonment of an invention are questions of fact; and every reasonable doubt thereon should be resolved in favor of the patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 112; Dec. Dig. § 87.*]

**3.** PATENTS (§ 82*)—PATENTABILITY—ABANDONMENT OF INVENTION.

Pending an application for a patent, the specification of which is broad enough to warrant the making of certain claims which are not made, the applicant, instead of inserting such claims by amendment, may at his election, make them the subject of a new application, which in such case may fairly be considered a continuation of the first, and their omission therefrom will not operate as an abandonment.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 105–107; Dec. Dig. § 82.*]

**4.** PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—TALKING MACHINES.

The Berliner patent, No. 534,543, for improvements in talking machines, claims 5 and 35, *held* valid against the claim that they were anticipated by the Edison British patent, No. 1,644, of 1878, or by any disclosures made by Bell and Tainter in connection with their application for patent No. 341,214, and the claims of prior public use and abandonment, and that claim 5 is for a function of an apparatus merely. Such claims are entitled to a construction covering the reproduction of sound by means of a vibrating stylus engaged with a laterally undulating groove of the sound record and free to be vibrated, and propelled thereby without other mechanical assistance. As so construed, such claims *held* infringed.

**5.** PATENTS (§ 176*)—"PROPELLED."

In a claim for a patent of an apparatus for reproducing sound consisting of a stylus shaped for engagement with a record and free to be vibrated and propelled by said record, the term "propelled" is the equivalent of "progressively fed."

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 176.*]

In Equity. Suit by the Victor Talking Machine Company and the United States Gramophone Company against the Duplex Phonograph Company. On final hearing. Decree for complainants.

Horace Pettit, for complainants.

Samuel Owen Edmonds and Dallas Boudeman, for defendant.

KNAPPEN, District Judge. The suit is upon patent No. 534,543, issued February 19, 1895, to Emil Berliner, complainants' assignor, for improvements in machines for recording and reproducing sound, called in the patent "gramaphones." Claims 5 (relating to method) and 35 (relating to apparatus for reproducing sound) are alone involved here. They are as follows:

"(5) The method of reproducing sounds from a record of the same which consists in vibrating a stylus and propelling the same along the record by and in accordance with the said record, substantially as described."

"(35) In a sound reproducing apparatus consisting of a traveling tablet having a sound record formed thereon and a reproducing stylus shaped for engagement with said record and free to be vibrated and propelled by the same, substantially as described."

The defense made here is that the patent is void, first, because of anticipation (a) by Edison, (b) by Bell & Tainter; second, because of public use more than two years prior to the application for the patent;

third, because the claims in question cover, as alleged, nothing more than the functions of Berliner's apparatus; fourth, because of the expiration on February 11, 1899, of a Canadian patent applied for by Berliner in the name of Suess, who assigned the patent to him; and, fifth, because of the expiration of certain British, French, and German patents issued to Berliner.

The claims in suit have already been several times before the courts. In what is known as the "original case," decided in 1905 by the Circuit Court for the Southern District of New York, it was held that the Berliner patent in suit was not anticipated; that it discloses patentable invention; and that it is not invalidated by prior public use of the invention or by abandonment. Victor Talking Machine Co. v. American Graphophone Co. (C. C.) 140 Fed. 860. This decision of the Circuit Court was in 1906 affirmed by the Circuit Court of Appeals for the Second Circuit. 145 Fed. 350, 76 C. C. A. 180. In Victor Talking Machine Co. v. Talk-O-Phone Co. (C. C.) 146 Fed. 534, and in the case of Same Complainant v. Leeds & Catlin (C. C.) 150 Fed. 147, on motions for preliminary injunction, the patent was again held valid as against several defenses, some of which were then newly asserted, including the defense that the patent had expired with certain foreign patents. This decision was affirmed by the Court of Appeals. 148 Fed. 1022, 79 C. C. A. 536. In Leeds & Catlin Co. v. Victor Talking Machine Co., 154 Fed. 58, 83 C. C. A. 170, an order of the Circuit Court adjudging the complainant guilty of contempt in violating the injunction issued under the decision last referred to was affirmed by the Circuit Court of Appeals. The two decisions of the Circuit Court of Appeals last referred to were affirmed by the Supreme Court of the United States April 19, 1909 (cases Nos. 80 and 81). 213 U. S. 301, 29 Sup. Ct. 495, 53 L. Ed. 805; Id., 213 U. S. 325, 29 Sup. Ct. 503, 53 L. Ed. 816. Several other cases have been heard on motions for preliminary injunctions, based upon the decree in the original case sustaining the patent.

The defendant's contention that the patent in suit has expired by reason of the claimed expiration of the Suess Canadian patent, as well as the proposition that claim 35 is invalid, as covering merely a mechanical function, were expressly decided by the Supreme Court adversely to defendant's contention in the Leeds & Catlin Case, No. 80. A denial of the claim that the patent in suit expired with the other foreign patents results from that decision. The remaining defenses now urged have either expressly or by apparently necessary implication been rejected by the Circuit Court and the Circuit Court of Appeals in one or more of the cases above referred to. Those decisions, while not binding upon me, are entitled to high consideration. An examination of the record and briefs fails to bear out the proposition that the "original case" was presented upon an insufficient record and without strenuous contest.

As to the defense of anticipation: As is well known, Edison was the pioneer inventor in the art of recording and reproducing sound. His records were made by vertical vibrations, producing in a pliable material indentations (as distinguished from a groove) corresponding to the sound waves which caused the vibrations. He was followed by Bell &

Tainter, whose record consisted of a groove of even width, but of varying depth; the elevations and depressions at the bottom of the groove corresponding to the sound waves which produced them. In the reproduction of sound thus recorded both Edison and Bell & Tainter used positive mechanical means for carrying the reproducing stylus across the record (or for conveying the record past the stylus), and thus keeping the stylus in engagement with the record. In Berliner's patent the sound vibrations produce a laterally undulating spiral line or groove of even depth, the inequalities caused by and representing the sound vibrations being upon the sides of the groove, the record tablet being composed of a hard, resisting material, and taking the form of a disk. In reproducing sounds, the patent in suit dispenses with mechanical means for conveying the stylus across the record, and by the mere engagement of the reproducing stylus with the record groove, the former being by the latter vibrated laterally by its undulations, is by the record groove itself guided and propelled in accordance therewith. This constitutes the "automatic" or "feed from the record" feature, which the claims under consideration are designed to protect.

The claimed anticipation by Edison is based upon this situation: The specifications of British patent No. 1,644, issued to Edison April 24, 1878, show a figure 34, representing a disk centered upon a horizontal shaft, the disk having on each of its opposite faces, and in apparent engagement therewith, a reproducing apparatus, the separate carrying arms of the reproducers connecting with opposite sides of a block, centered on a horizontal shaft below and at right angles with the shaft carrying the record disk. The only reference in the specifications to this figure 34 is in these words:

"Figure 34 is a perspective view showing a double phonet (reproducer), there being a spiral line of indentations on each side of the revolving disk, d, one phonet coming into action as the other finishes; in this case the spirals should be in opposite directions, so that the disk continuing to revolve in the same direction moves one phonet from the center outwards, and then the other phonet is connected and moves back towards the center; this may be used as a toy."

It is this figure 34 and the description referred to which are relied upon as showing that Edison was familiar with the idea of propulsion of the reproducing stylus by and in accordance with the record. None of the claims of the patent suggest such automatic propulsion. It is by no means clear that figure 34 discloses, or is intended to disclose, a device by which the stylus and sound box shall be propelled and guided across the face of the record by the record itself, and without the use of independent mechanical means. Nor is it by any means clear that the figure discloses or is intended to disclose a record groove with undulating sides by which the stylus, through its impingement upon the sides of the groove, is vibrated and propelled. On the contrary, the record is expressly referred to as a "spiral line of indentations." The disclosure of a record automatically vibrating and propelling the stylus is to say the least vague. This same figure 34 has been so characterized by Judge Shipman in American Graphophone Co. v. Leeds (C. C.) 87 Fed. 873, 877. While this figure 34 was not discussed in the opinion of the court or in briefs of counsel in the "original case," the answer

set up the Edison patent in question as an anticipation; and in the Talk-O-Phone Case figure 34 was discussed in briefs of counsel. The burden is upon the defendant to show anticipation. It is not claimed that any practical use has been made of the feed from the record idea until by Berliner and his assignee, whose efforts have materially advanced the art of reproducing sound and made the feed from the record machine a great commercial success. In such circumstances, the identity of methods and results being, to say the least, doubtful, the doubt must be solved in favor of complainants. Walker on Patents (4th Ed.) § 76; Simonds Rolling Machine Co. v. Hathorn Mfg. Co., 93 Fed. 958, 36 C. C. A. 24. The conclusion reached is that the patent claims in suit were not anticipated by Edison.

In support of the alleged anticipation by Bell & Tainter, reliance is had, first, upon a paper (known as the "Volta laboratory paper") deposited by them in the Smithsonian Institute in October, 1881, nearly four years before the making of their application for United States patent No. 341,214, which was applied for June 27, 1885, and issued May 4, 1886; second, upon certain language in the specifications of that patent; and, third, the testimony of Dr. Bell taken during the litigation over the patent in suit. Neither the Volta laboratory paper nor Dr. Bell's testimony were before the court in the "original case." In the Volta laboratory paper, the invention of cutting and engraving the original record, as distinguished from indenting, was recorded; and it is also stated that the record groove might be either of the vertically undulating variety or the "wavy zigzag line of uniform depth" "in a plane parallel to the surface of the prepared substance." One of the aims of declarants was said to be "to devise a means of reproducing the sounds without touching the record, so as to avoid deterioration"; and it was stated that publication was withheld in the hope that the efforts of the inventors might result in a "more simple form of apparatus adapted for popular use."

The language of the specifications referred to is this:

"The invention consists, fourthly, in loosely mounting the reproducing style so that it can readily be guided by the record. Preferably a reproducing style, or rather what may be called the 'head' of the reproducing instrument, is mounted on a universal joint, and the style is pressed against the record by the yielding pressure of a spring or weight."

There is no suggestion in either the Volta laboratory paper or in the patent specifications or claims of propelling the stylus by means of the record. In Dr. Bell's testimony it is stated that he was aware prior to the application for the Bell & Tainter patent under consideration of the capacity of the record groove in various forms of records made by him to feed the reproducing stylus laterally across the record, but that he preferred the mechanical feed because (in substance) the automatic method required a lever so long as to make it impracticable, and that, while a short lever would follow the record to some extent, it could not be relied upon to remain in the groove. The most that can be claimed for the testimony of Dr. Bell is that Bell & Tainter knew that the stylus could be fed by the record, but did not regard such method valuable and did not use or claim it, but abandoned such partial discoveries as they had made in that regard. So far as the invention in

question may be found to have been disclosed by the patent specifications, it would seem to have been abandoned by failure to claim it. Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783. It appears that in the machines constructed according to the Bell & Tainter method the stylus would in fact follow the record for an insignificant distance without mechanical help; and it is now urged that, by lengthening the "tone arm," the same result could have been accomplished in Bell & Tainter's invention as under that of Berliner. But it is not claimed that as disclosed by the Bell & Tainter patent, or as the apparatus was actually made or constructed under that patent, the reproducing stylus was capable of being propelled across the record over its entire face. The fact that in the Bell & Tainter device the stylus would without mechanical means follow the record for an insignificant distance was purely incidental. The flexibility of adjustment of the reproducer was apparently designed only to permit the stylus by the force of gravity, to come in contact with the bottom of the record groove.

The alleged public use of the Berliner invention two years before application for the patent in suit is predicated upon this situation: On November 17, 1887, Berliner applied for patent No. 564,586, which was issued July 28, 1896. The application described the invention covered by claims 5 and 35 of the patent in suit, but the invention was not included within the claims made. On March 30, 1892, and thus while the application for the later issued patent was still pending, the application for the patent in suit was filed. On November 12, 1887, and again on August 18, 1888 (and thus after the application under which patent No. 564,586 was issued), Berliner published an article in the Electrical World relating to his discovery, and on May 16, 1888 (likewise after the filing of the application for the patent last mentioned), read a paper before the Franklin Institute, in which he disclosed the invention covered by claims 5 and 35 of the patent in suit, which had not yet been applied for. The invention was not publicly used (unless in the manner stated) before the issue of the patent in suit. The Circuit Court of Appeals for the Second Circuit, without passing upon the effect of the publication and lecture as a public use, held that the specifications in the patent first applied for, but subsequently issued, were broad enough to warrant the claims in question; and, as the application for such secondly issued patent was subject to amendment by adding the claims here in suit, no abandonment could be predicated on the fact that the claims were taken under a later application while the earlier was still pending, rather than by the amendment of the earlier application. 145 Fed. 351, 76 C. C. A. 181. This holding of the Circuit Court of Appeals is assailed as subversive of well-settled rules announced by authorities referred to in Tie Plate Co. v. St. Louis Transit Co., 137 Fed. 80, 70 C. C. A. 1, and Western Electric Co. v. Sperry Elec. Co., 58 Fed. 186, 7 C. C. A. 164, and by the case of Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 23 L. Ed. 952. I find nothing in either of the cases cited opposed to the decision of the Circuit Court of Appeals, and the rule announced by that court impresses me as sound. Questions relating to actual or constructive abandonment of invention are questions of fact, and every reasonable doubt relating to such questions should be solved

in favor of the patent. Walker on Patents (4th Ed.) § 108, and cases cited. In my opinion the defense under consideration is not sustained.

Is claim 5 void as covering a mere function of Berliner's apparatus? The validity of this claim turns upon the question whether it is to be construed as covering a mere function of operation of a machine, or whether, on the other hand, it is to be construed as covering the method of reproducing sound by "phonetically vibrating the stylus by the record undulations, and at the same time, by the same means, advancing or propelling a phonetically vibrated stylus across a record tablet throughout the entire length of the sound record to be produced." The more prominent decisions affecting the application of the rule of construction are cited and discussed in Risdon Iron & Locomotive Works v. Medart, 158 U. S. 68, 15 Sup. Ct. 745, 39 L. Ed. 899. The question presented is not free from difficulty. Taking into account the presumption of validity and the course of the prior decisions upon these claims, I am disposed to hold claim 5 valid as against the objection in question.

The question of infringement remains. In my opinion the claims of the patent in suit should be construed as covering the reproduction of sound by means of a vibrating stylus engaging with a laterally undulating groove of the sound record, and free to be vibrated and propelled thereby without other mechanical assistance. The bill in this cause was filed February 11, 1907. Until at least as late as October, 1906, defendant's machine was constructed and operated in every respect material to this case identically the same as that of complainant, and in the machine as so constructed the reproducing stylus was plainly operated "by and in accordance with the record," unaided by any other feed mechanism. The defendant's machine, as so constructed, is a clear infringement of the patent in suit. For some months before this suit was begun, defendant had been notified by complainant of its infringement, and had unsuccessfully negotiated with the latter for a license to manufacture under complainant's patent. When this suit was begun, complainant had not been advised that defendant's machines were constructed or claimed to be constructed otherwise than as above stated. It appears by the answer and proofs that about October, 1906 (which was about the time of the decision of the Circuit Court of Appeals in the Leeds & Catlin Case), the defendant began using, at least experimentally, near the bearing of the bracket which supports the framework carrying the horns (to which are attached the reproducer and stylus), a weak, unadjustable, spiral spring, one end being attached to the bracket and the other end to a pin projecting from the framework carrying the horns. In November, 1906, defendant applied for a patent on this device, which was refused on interference. Since January, 1907, defendant has been putting out all its machines with such coil spring attached, claiming justification therefor by license under patent No. 884,963, issued April 14, 1908, to Valiquet. It is defendant's contention that, when this spring is not used (as in complainant's device), the stylus point presses against and is carried by the outer wall of the record groove; that by the use of the spring the pressure of the stylus is taken from the outer wall, and brought against the inner wall of the groove, which is claimed by defendant to be more

regular than the outer wall, and thereby the wearing away of the record groove is prevented, the spring acting as a sort of "restrainer" upon the stylus, permitting less "wobbling" and giving "greater fidelity to the record." The defendant characterizes the pressure of this coil spring as an "elastic mechanical feed," and as positively producing a "yielding pressure propulsion," and insists that there is thus created a "variable mechanical pressure" equally distinct from the Edison mechanical feed and the Berliner automatic feed, and that, when this spring is used, the stylus is no longer propelled by the record, but is propelled solely by the spring.

I am not impressed by this contention. It is true that the effect of the attaching of this spring is to cause the sound box, when no stylus is attached, to move rapidly, but not uniformly, from the periphery of the record to and past the inner edge of the record spiral; such movement ordinarily occupying about two seconds in time; the reproduction of the record, and thus the progressive feeding of the stylus thereto, requiring usually at least as many minutes. On the other hand, if the stylus is attached to the reproducing box, the latter will not travel in the slightest degree across the record except as the record disk revolves in engagement with the stylus box; for the reason that the slight, almost hair-line roughness of the record, caused by the groove cut therein, is sufficient to overcome the effect of the spring. The testimony is in conflict as to the extent to which, during operation, the stylus is held by the spring against the inner wall of the record groove; but it satisfactorily appears that the spring does in large part at least relieve the pressure from the outer wall of the record groove, the stylus following and putting the greater pressure upon the inner wall, although in view of the diminutive size of the record groove, and the sloping walls thereof, the needle appears to be vibrated by, and to some extent to come into contact with, both sides of the record groove. The testimony indicates a possibility, by the use of defendant's spring device, of using a groove with a record on but one face. It is conceded that the untrained ear cannot distinguish between the operation of the machine with or without the spring. This is easily seen by alternately attaching and detaching the spring, which can be done readily and instantly by inexperienced fingers during the reproduction of the record, and without interference therewith. Whether the trained ear can distinguish the difference is at least doubtful. The eye, as would be expected, can detect no difference in the position of the stylus or the method of propulsion, whether the spring is off or on. Complainant's records are as well adapted to use on defendant's machines as on those of complainant, and are regularly used thereon.

Considering the evidence most favorably to defendant, can the spring in question be regarded as a mechanical feed? It must be conceded that the term "propelled," as used in the patent claims, is the equivalent of "progressively fed." The only object of such propelling is to feed the stylus to the record. It was as distinguished from the mechanical methods of Edison and of Bell & Tainter that the patent claims in question were allowed. Having in view the invention, and the purpose of propelling the stylus, it seems clear that the spring in question is not a positive mechanical feed, and that, notwithstanding

the use of the spring, the stylus in defendant's machine is still free to follow the record, and is propelled by and in accordance with the record. The stylus cannot move across the record except as the record carries it, and must entirely cease its movement when the movement of the record stops; while in a positive mechanical feed, as for example, the feed screw in the Edison phonograph, the reproducer travels uniformly and progressively across the record, even when the stylus is not in engagement therewith. I am not impressed with the suggestion that the issuing of the Valiquet patent affords any strong prima facie evidence of a patentable difference between the invention covered by it and that of Berliner. The specifications of Valiquet suggest that the device in question can readily be attached to existing "feed from the record" machines, and it would seem that the inventor more ac-. curately expressed his idea of the invention (so far as the spring is concerned) in the statement that by the use of the spring the stylus was "restrained against excessive movement by said record groove." But be that as it may, and conceding, for the purposes of this opinion, that the defendant's spring may increase the efficiency of complainant's device and thus be an improvement thereon, if it does not change the principle of its operation and is founded upon the rights of invention secured by the complainant's patents, it is none the less an infringement. Walker on Patents (4th Ed.) § 367, and cases cited; Western Elec. Co. v. Larue, 139 U. S. 601, 11 Sup. Ct. 670, 35 L. Ed. 294; Duff Mfg. Co. v. Forgie (C. C.) 78 Fed. 626. It seems not unworthy of note that a tilting of the machine, and thus the application of gravity, would have the same effect as the coil spring in causing the pressure of the stylus to be relieved from the outer wall and put upon the inner wall of the record groove, and thus the stylus be "restrained against excessive movement by the record groove." It is possible that, if defendant's machine should be so constructed as to be capable of use only with the spring and with a one wall record, it might not infringe complainant's patent. On this point I express no opinion. But in my opinion, defendant's machines, as constructed and sold, and capable as they are of use both with and without the spring, and used as they are in connection with complainant's two-sided records and in the method of operation of complainant's machines protected by their patents, the defendant's machines do infringe. A like conclusion was reached, with respect to what seems a similar device, in Victor Talking Mach. Co. v. Hoschke (C. C.) 158 Fed. 309.

The complainant is entitled to the usual interlocutory decree for injunction and accounting.